UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACYE BENARD WASHINGTON,<br><br>        Plaintiff,<br><br>    v.<br><br>SALINAS VALLEY STATE PRISON, et al.,<br><br>        Defendants. | Case No. 22-cv-05831 BLF (PR)<br><br>**ORDER OF PARTIAL DISMISSAL AND DISMISSAL WITH LEAVE TO AMEND** |

Plaintiff, a California inmate, filed the instant *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against prison and medical officials at Salinas Valley State Prison ("SVSP") where he is currently incarcerated. Plaintiff's motion for leave to proceed *in forma pauperis* ("IFP") will be addressed in a separate order.

**DISCUSSION**

**I.**     <u>Standard of Review</u>

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any

cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See id.* § 1915A(b)(1),(2). Pro se pleadings must, however, be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

To state a claim that is plausible on its face, a plaintiff must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). From these decisions, the following "two principles" arise: "First to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)

## II. Plaintiff's Claims

Plaintiff's allegations are based on events that took place on December 24, 2021. Dkt. No. 1 at 4. Plaintiff is permanently confined to a wheelchair and receives assistance under the ADA. *Id.* That morning, Defendant Dominguez, the Unit C-4 Control Booth Officer, opened Plaintiff's cell door for morning medication release. *Id.* Plaintiff requested an "ADA Inmate Assistant" to push him to the clinic to retrieve his morning medication. *Id.* Plaintiff takes issue with Defendant Dominguez's failure to close his cell door since the prison was still operating under "Covid-19 modifications and restrictions, which included mandatory mask wearing and social distancing." *Id.* at 5. Plaintiff claims

2

several inmates were standing around or near his cell door, which caused him to be concerned for his safety and health because he has "paralysis, asthma and vision impairments." *Id.* Plaintiff asked the ADA assistant who arrived to tell Defendant Dominguez to stop leaving his cell door wide open and allowing other inmates to stand idly nearby. *Id.* at 6. When he was about to wheeled out of his cell, Defendants Guijarro and Tapia approached and asked him "what his problem was." *Id.* Plaintiff repeated his concerns ats being exposed to other inmates in violation of health and safety protocols. *Id.* Then at Defendant Guijarro's prompting, Plaintiff proceeded to Facility "C" clinic to get his medication and returned to his housing unit at approximately 9:30 a.m. *Id.* at 7.

When Plaintiff returned to his housing pod, he saw that Defendants Guijarro and Tapia had begun searches of his cell, No. 111, and the adjacent one, No. 112. *Id.* Plaintiff believes that his cell search was conducted in retaliation for his speaking out about Defendant Dominguez violating safety, security and healthcare protocols. *Id.* at 7-8. Plaintiff voiced this belief to Defendant Tapia and stated that he was going to report the matter to the sergeant and lieutenant. *Id.* at 8. As he turned his wheelchair to proceed to the exit, Plaintiff heard an alarm go off in the unit. *Id.* He heard running behind him and a voice yelling, "get down," and "get in the shower," directed towards other inmates. *Id.* at 9. Defendant Guijarro approached Plaintiff and ordered him to "cuff up," after which he handcuffed Plaintiff's wrists in front of his body. *Id.* Defendant Guijarro then pushed Plaintiff "at a hurried pace" toward the exit. *Id.* Plaintiff's feet and pants were on the ground and being dragged underneath the wheelchair's front wheels. *Id.* at 10. Plaintiff yelled at Defendant Guijarro to stop pushing him, also asking where they were going. *Id.* As he was turning back with his neck and shoulders to speak with Defendant Guijarro, Plaintiff was suddenly tipped out of the wheelchair onto the concrete floor of the dayroom. *Id.* He landed on his shoulder and head hitting the pavement. *Id.* Plaintiff briefly blacked-out and was disoriented until he heard people around him. *Id.* Plaintiff remained on the ground for several minutes, in handcuffs and in pain, before any medical staff spoke to

3

him. *Id.*

When a correctional sergeant, Defendant John Doe No. 6, asked Plaintiff if he was ready to get up and return to his cell, Plaintiff responded that he needed medical attention. *Id.* at 11. Medical staff soon arrived, and John Does No. 4 and 5 spoke to Plaintiff while he was still on the ground in handcuffs. *Id.* Plaintiff informed them that he was in severe pain in his head, shoulders, and back, and that the "guard had dumped him out of his wheelchair." *Id.* Medical staff departed and returned to ask Plaintiff if he was ready to get back into his wheelchair and return to his cell. *Id.* Plaintiff responded that he needed to see the doctor and that he was in pain; he requested a gurney or ambulance. *Id.* The medical staff stated that they had neither a gurney nor an ambulance. *Id.* Medical staff left and returned again to tell Plaintiff that if he got up and into his wheelchair, they would take him to the medical clinic or triage. *Id.* at 12. Plaintiff again stated that he was in pain and needed a gurney. *Id.* Seconds later, another alarm went off in the unit and nearly all the custody and medical staff left the pod, leaving Plaintiff on the floor still in handcuffs. *Id.* When medical and custody staff returned, Plaintiff was informed that "the Nurse or Doctor John Doe No. 7 and John/Jane Doe No. 8 had cleared him to return to his cell." *Id.* Plaintiff claims Defendant Serrato and John Does. Nos. 1 and 2, surrounded him, sat him up to a seated position, and attempted to lift him off the ground and into his wheelchair; all the while, Plaintiff remained in restraints and unable to assist in any manner. *Id.* at 12-13. While he was being lifted, Defendant John Doe No. 3, a correctional lieutenant who was positioned behind the wheelchair, grabbed locks of Plaintiff's shoulder length, dread-lock styled hair and pulled Plaintiff's head backwards towards him. *Id.* When Plaintiff yelled for him to stop, the officers holding him suddenly dropped Plaintiff back down on the concrete pavement and walked towards the exit. *Id.* at 13. Defendant Dominguez opened cell no. 117, letting out two inmates who picked up Plaintiff and got him back into his wheelchair. *Id.* Defendant John Doe No. 2, who was at the pod's door, then came and removed Plaintiff's handcuffs. *Id.* Plaintiff then wheeled himself back to his cell, No.

4

111. *Id.* Plaintiff was in so much pain after this incident that he was unable to get out his bunk for three days, unable to go to the cell door to get his daily meals or retrieve his daily medications. *Id.* at 14.

Plaintiff filed an inmate grievance regarding the incident and had a video-taped staff misconduct interview with the facility lieutenant, approximately four to five days after the incident. *Id.* He was informed that the matter would be investigated by the Office of Internal Affairs ("OIA"). *Id.* Plaintiff was later taken to the prison clinic where the nurse offered him Tylenol or Motrin, which Plaintiff had to refuse due to pre-existing medical conditions, i.e., chronic kidney disease, which prohibited the use of NAIDS per doctor's advice. *Id.* Plaintiff also had x-rays taken of his head and upper body, approximately four to five days later. *Id.*

Based on these allegations, Plaintiff claims that he was subject to misconduct and abuse which violated his rights under the American with Disabilities Act ("ADA") and the Rehabilitation Act. Dkt. No. 1 at 15. Plaintiff also claims he was subjected to elderly abuse, unnecessary and excessive force, and deliberate indifference to serious medical needs. *Id.* Plaintiff seeks damages, including punitive, and injunctive relief in the form of body cameras on SVSP guards. *Id.* at 3.

A.  **ADA and Rehabilitation Act**

The Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., and the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. §§ 701 et seq., prohibit discrimination against an otherwise qualified individual based on his or her disability. "The [RA], the precursor to the ADA, applies to federal agencies, contractors and recipients of federal financial assistance, while the ADA applies to private employers with over 15 employees and state and local governments." *Calero-Cerezo v. U.S., Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). "There is no significant difference in analysis of the rights and obligations created by the ADA and the [RA]," *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999), and courts routinely look to RA case law to interpret the rights and

obligations created by the ADA, *see*, *e.g., Collings v. Longview Fibre Co.*, 63 F.3d 828, 832 n. 3 (9th Cir.1995) ("The legislative history of the ADA indicates that Congress intended judicial interpretation of the Rehabilitation Act be incorporated by reference when interpreting the ADA.").

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II protects "a qualified individual with a disability." 42 U.S.C. § 12132. In the context of the ADA, the term "disability" means: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of the person; (B) having a record of such an impairment; or (C) being regarded as having such an impairment." *Id.* § 12102(1).

In order to obtain relief under either the ADA or RA, a plaintiff must show (1) that he is disabled within the meaning of the act, (2) that he is "otherwise qualified" for the services sought, (3) that he was excluded from the services sought solely by reason of his disability, and (4) that the program in question receives federal financial assistance (for an RA claim), or is a public entity (for an ADA claim). *See, e.g., Zukle*, 166 F.3d at 1045.

Plaintiff asserts that he is permanently confined to a wheelchair and requires an ADA assistance, which satisfies the first element, and SVSP qualifies as a public entity to satisfy the fourth element. However, there are no allegations to establish the remaining elements, *i.e.*, that Plaintiff was excluded from or denied the benefits of any service, program, or activity of the prison solely based on his disability. Nor has Plaintiff stated an RA claim where there are no allegations that he was denied a service and that service receives federal funds. Lastly, Plaintiff indicates that he is seeking damages and injunctive relief in the form of body cameras on SVSP guards. Dkt. No. 1 at 3. Under Title III of the ADA (public accommodations and services operated by private entities), equitable relief in the form of an injunction is the only remedy available to private parties. *See Antoninetti v.*

6

*Chipotle Mexican Grill*, 614 F.3d 971, 980-81 (9th Cir. 2010) (leaving open the question whether a court that finds a violation of Title III can deny injunctive relief and fashion some sort of other equitable relief in its stead). It is not readily apparent how body cameras are relevant to remedy an ADA or RA violation. Furthermore, monetary damages are not available under Title II of the ADA absent a showing of discriminatory intent. *See Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998). Plaintiff's complaint contains no allegation involving discriminatory intent.

Based on the foregoing, this claim shall be dismissed with leave to amend to allege sufficient facts to establish a claim under the ADA and/or the RA against Defendant SVSP, if Plaintiff can do so in good faith, and to state an appropriate form of relief.

### B. <u>Use of Force</u>

Plaintiff next claims he was subject to "elderly abuse, [and] unnecessary and excessive force." Dkt. No. 1 at 15. With regard to "elderly abuse," there are no factual allegations to indicate that Plaintiff was subjected to abuse due to his age. Furthermore, there is no specific constitutional protection against "elderly" abuse. Rather, abuse against prisoners is subsumed under the Eighth Amendment's prohibition against cruel and unusual punishment as discussed below. On the other hand, Plaintiff may be able to state a state law claim for elder abuse if he is able to provide the essential factual allegations to support such a claim, i.e., a failure by a caregiver to meet the elder's basic needs or to protect the elder from harm. *See* Cal. Welf & Inst. Code § 15610.07. The Court would then take supplemental jurisdiction over this related state law claim under 28 U.S.C. § 1367(a).

The treatment a convicted prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993). "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (ellipsis in original) (internal

7

quotation and citation omitted). Whenever prison officials stand accused of using excessive force in violation of the Eighth Amendment, the deliberate indifference standard is inappropriate. *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). Instead, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Id.* at 6-7; *Whitley*, 475 U.S. at 320-21; *Jeffers v. Gomez*, 267 F.3d 895, 912-13 (9th Cir. 2001) (applying "malicious and sadistic" standard to claim that prison guards used excessive force when attempting to quell a prison riot, but applying "deliberate indifference" standard to claim that guards failed to act on rumors of violence to prevent the riot). Neither negligence nor gross negligence is actionable under § 1983 in the prison context.[1] *See Farmer v. Brennan*, 511 U.S. 825, 835-36 & n.4 (1994). The applicable standard is one of deliberate indifference to inmate health or safety under the Eighth Amendment, *id.* at 834.

Plaintiff describes two incidences involving the use of force on December 24, 2021. First, he alleges that Defendant Guijarro handcuffed him, pushed him in his wheelchair "at a hurried pace" towards the exit after an alarm rang, and then "dumped him out of his wheelchair." *See supra* at 3. Plaintiff claims that Defendant Guijarro's use of "forceful measures… caused Plaintiff to fall out of his wheelchair due to illegal handcuffing" of a physically disabled prisoner. Dkt. No. 1 at 17. Liberally construed, Plaintiff states a cognizable claim against Defendant Guijarro. *See Iqbal*, 556 U.S. at 678.

The second use of force occurred when staff attempted to lift Plaintiff off the ground back onto his wheelchair. *See supra* at 4. Plaintiff alleges that while Defendant Serrato and John Does Nos. 1 and 2 were lifting him off the ground, Defendant John Doe No. 3, who was positioned behind the wheelchair, grabbed Plaintiff's hair and pulled his head backwards towards him. *Id.* When Plaintiff yelled for him to stop, the officers all dropped Plaintiff back down on the ground. *Id.* Plaintiff claims that John Doe No. 3 used

---

[1] But negligence remains a viable avenue for relief under state law. *See, e.g., Rivera v. Corr. Corp. of Am.*, 999 F.3d 647, 654-55 (9th Cir. 2021).

"illegal and unnecessary" force which was "carried out for the sole purpose of causing harm and done with callousness, wicked and sadistic mental state." Dkt. No. 1 at 20. Liberally construed, Plaintiff also states a cognizable excessive force claim based on this incident against Defendant John Doe No. 3, but not against Defendant Serrato and John Does Nos. 1 and 2.

### C. Deliberate Indifference to Serious Medical Needs

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (*en banc*). A determination of a "deliberate indifference" claim involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *Id.* at 1059.

Regarding the first element, a serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment. *Id.* at 1059-60. With regards to the second element, a prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer*, 511 U.S. at 837. The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id.* If a prison official should have been aware of the risk, but did not actually know, the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).

Plaintiff's medical claim is based on him being left on the ground without help for some time; the attached copy of his grievance on the matter indicates Plaintiff was on the floor for two hours without help. Dkt. No. 1 at 22. Plaintiff claims Defendants Serrato, and John Does Nos. 1, 2, 4, 5, 7 and 8 are liable for the delay and failure to provide medical care. *Id.* at 19-21. Liberally construed, Plaintiff states a cognizable claim for deliberate indifference to serious medical needs against these defendants who failed to provide any medical treatment while Plaintiff remained on the ground.

Although the use of "John Doe" to identify a defendant is not favored in the Ninth Circuit, *see Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); *Wiltsie v. Cal. Dep't of Corrections*, 406 F.2d 515, 518 (9th Cir. 1968), situations may arise where the identity of alleged defendants cannot be known prior to the filing of a complaint. In such circumstances, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover their identities or that the complaint should be dismissed on other grounds. *See Gillespie*, 629 F.2d at 642; *Velasquez v. Senko*, 643 F. Supp. 1172, 1180 (N.D. Cal. 1986). Here, it appears that Plaintiff may be able to identify the appropriate Defendants by name through discovery. He will be given an opportunity to identify John Doe Defendants through discovery if this matter proceeds after Plaintiff files an amended complaint.

D. **Retaliation**

Plaintiff claims Defendants Dominguez, Guijarro, and Tapia conducted a retaliatory cell search because he expressed a grievance about a health, safety, and security concern. Dkt. No. 1 at 16-18.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson,* 408 F.3d 559, 567-68 (9th

10

Cir. 2005) (footnote omitted).

Plaintiff's allegations are insufficient to state a retaliation claim against these Defendants. Although he satisfies the first three elements under *Rhodes* based on the allegations that these three Defendants took adverse action (cell search) against Plaintiff because he voiced a complaint, there are no allegations to satisfy the fourth and fifth elements, *i.e.*, that their actions chilled the exercise of his First Amendment rights and did not reasonably advance a legitimate correctional goal. Plaintiff shall be granted leave to amend to state sufficient facts to support a retaliation claim, if he can do so in good faith.

### E. Due Process

Plaintiff claims Defendant Tapia filed a false Rule Violation Report ("RVR") against Plaintiff regarding these events, which was later found to be unfounded. Dkt. No. 1 at 18. Plaintiff appears to be attempting to state a due process claim.

Prisoners retain their right to due process subject to the restrictions imposed by the nature of the penal system. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Thus, although prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply, where serious rules violations are alleged and the sanctions to be applied implicate state statutes or regulations which narrowly restrict the power of prison officials to impose the sanctions and the sanctions are severe, the Due Process Clause requires certain minimum procedural protections. *See id.* at 556-57, 571-72 n.19. The placement of a California prisoner in isolation or segregation, or the assessment of good-time credits against him, as a result of disciplinary proceedings, for example, is subject to *Wolff's* procedural protections[2] if (1)

---

[2] *Wolff* established five procedural requirements. First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564. Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]." *Id.* Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)). Fourth, "the inmate facing disciplinary proceedings should be allowed to call

state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation, and (2) the liberty in question is one of "real substance." *See Sandin v. Conner*, 515 U.S. 472, 477-87 (1995). The fact that a prisoner may have been innocent of the charges does not raise a due process issue. The Constitution demands due process, not error-free decision-making. *See Ricker v. Leapley*, 25 F.3d 1406, 1410 (8th Cir. 1994); *McCrae v. Hankins*, 720 F.2d 863, 868 (5th Cir. 1983).

Plaintiff's allegations are insufficient to state a due process claim against Defendant Tapia because he does not describe the RVR charge, what deprivations he suffered during the disciplinary proceedings, whether he was found guilty, and if so, what sanctions he received as a result of a guilty finding to trigger *Wolff*'s procedural protections. Furthermore, even if the sanctions were severe enough to trigger *Wolff*, Plaintiff must allege that he was actually deprived of at least one of *Wolff's* protections. Plaintiff is also advised that if the procedurally protected liberty interest of which the prisoner is deprived during the disciplinary process is restored during the prison administrative appeal process, the prisoner does not have a due process claim. *See Frank v. Schultz*, 808 F.3d 762, 763-64 (9th Cir. 2015) (summary judgment properly granted to defendants on due process claim where prisoner filed a successful administrative appeal which led to the removal of the incident report from his file and the forfeited credits were restored).

Plaintiff shall be granted leave to amend this claim to allege sufficient facts to state a due process claim against Defendant Tapia, if he can do so in good faith.

### F.    Supervisor Liability

Plaintiff claims Sergeant John Doe No. 6 is liable for failure to properly train

---

witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566. Fifth, "[w]here an illiterate inmate is involved . . . or where the complexity of the issues makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or . . . to have adequate substitute aid . . . from the staff or from a[n] . . . inmate designated by the staff." *Id.* at 570.

Defendants Guijarro, Tapia, Serrato, and Does 1 and 2, all correctional officers whom he supervises on the Facility C prison yard. Dkt. No. 1 at 21.

A supervisor may be liable under section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Henry A. v. Willden*, 678 F.3d 991, 1003-04 (9th Cir. 2012). Even if a supervisory official is not directly involved in the allegedly unconstitutional conduct, "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011) (citation omitted).

Absent allegations of personal involvement in the deprivation, Plaintiff's claim against Sgt. John Doe No. 6 based on a failure to train is contingent on his ability to state a cognizable claim against his subordinates. The Court has found the complaint states sufficient allegations to state claims of excessive force and deliberate indifference to serious medical needs against subordinates, Defendants Guijarro, Serrato, and John Does Nos. 1 and 2. *See supra* at 8-9. Accordingly, Plaintiff states a supervisor liability claim against Defendant Sgt. John Doe No. 6, whom he can attempt to identify through discovery.

### G. Eleventh Amendment Immunity

Plaintiff sues SVSP "in its official capacity in representation of the prison facility Warden, Trent Allen," who was responsible for the overall supervision, training and incorporation of rules, practices, and procedures in compliance with state and federal laws, mandate and orders relative to the care and treatment of SVSP inmates, including those who are mentally disabled, physically disabled, vision impaired and are fifty (50) years of age or older." Dkt. No. 1 at 16.

The Eleventh Amendment to the U.S. Constitution bars a person from suing a state

in federal court without the state's consent. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984). The U.S. Supreme Court has held that state officials acting in their official capacities are not "persons" under Section 1983 because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, such a suit is therefore no different from a suit against the state itself. *Id.* Accordingly, the Eleventh Amendment bars Plaintiff's claims for monetary relief to the extent that they are based on acts by Defendant Allen in his official capacity. *See id.* Such claims for damages must be dismissed.

On the other hand, if Plaintiff is seeking to hold Defendant Allen liable as a supervisor in his *individual* capacity, he may only do so based on the culpability of a subordinate, as with Defendant Sgt. John Doe No. 6. *See supra* at 13. Absent allegations of personal involvement in the deprivation, Plaintiff may be able to state a claim against Defendant Allen "for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr*, 652 F.3d at 1208. Plaintiff shall be granted leave to amend this claim to state sufficient facts to support a claim for supervisor liability against Defendant Allen under *Starr*.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. The complaint states the following cognizable claims: (1) excessive force claims against Defendants Guijarro and John Doe No. 3 (lieutenant); (2) deliberate indifference to serious medical needs against Defendants Serrato, and John Does Nos. 1, 2, 4, 5, 7, and 8; and (3) supervisor liability claim against Defendant Sgt. John Doe No. 6.

2. Plaintiff's claim for damages against the SVSP and Defendant Allen in their official capacity is **DISMISSED with prejudice** as barred by the Eleventh Amendment.

14

3. The following claims are **DISMISSED with leave to amend**: (1) ADA and/or RA claim against SVSP; (2) elder abuse claim under state law; (3) retaliation claim against Defendants Dominguez, Guijarro, and Tapia; (4) due process claim against Defendant Tapia; and (5) supervisor liability claim against Defendant Allen.

Within **twenty-eight (28) days** of the date this order is filed, Plaintiff shall file an amended complaint to correct the deficiencies described above. The amended complaint must include the caption and civil case number used in this order, Case No. 22-cv-05831 BLF (PR), and the words "AMENDED COMPLAINT" on the first page. If using the court form complaint, Plaintiff must answer all the questions on the form in order for the action to proceed. The amended complaint supersedes the original, the latter being treated thereafter as non-existent. *Ramirez v. Cty. Of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015). Consequently, claims not included in an amended complaint are no longer claims and defendants not named in an amended complaint are no longer defendants. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir.1992).

**In the alternative**, Plaintiff may file a notice in the same time provided that he wishes to strike the deficient claims from the complaint and proceed solely on the cognizable claims identified above. The Court will order those claims stricken, and the matter shall proceed on the cognizable claims against the relevant Defendants.

4. **Failure to respond in accordance with this order in the time provided will result in the dismissal with prejudice of all the deficient claims under paragraph 3 for failure to state a claim for relief. The matter will then proceed based on the cognizable claims identified under paragraph 1.** *See supra* at 14. Plaintiff will be given a reasonable length of time and opportunity to learn the identity of any John Doe Defendants through discovery.

4. Plaintiff's IFP motion has been denied for failure to show an adequate level of poverty in a separate order. Accordingly, notwithstanding the filing of an amended complaint, this action will be dismissed if Plaintiff fails to pay the full filing fee in the time

provided in the court order denying his IFP motion.

5. The Clerk shall include two copies of the court's complaint with a copy of this order to Plaintiff.

**IT IS SO ORDERED.**

Dated: ___**March 20, 2023**____

BETH LABSON FREEMAN
United States District Judge

Order of Dismissal with Leave to Amend
PRO-SE\BLF\CR.22\05831Washington_dwlta

16