UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACYE BENARD WASHINGTON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SALINAS VALLEY STATE PRISON, et al.,<br><br>　　　　Defendants. | Case No. 22-cv-05831 BLF (PR)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; TERMINATING MOTION AS MOOT; SETTING BRIEFING SCHEDULE ON REMAINING CLAIMS**<br><br>(Docket Nos. 24, 25) |

Plaintiff, a state prisoner proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983 on October 7, 2022. Dkt. No. 1.[1] The Court dismissed several claims for failure to state a claim for relief and served the cognizable claims on Defendants Guijarro and Serrato. Dkt. No. 14 at 3. Defendants filed a motion for summary judgment on the grounds that Plaintiff failed to exhaust available administrative remedies on the claims against them. Dkt. No. 24. Plaintiff filed opposition, Dkt. No. 26, and Defendants replied, Dkt. No. 33. Defendants also moved to stay any merits-based discovery as unnecessary to the exhaustion issue, pending the outcome of their summary judgment motion. Dkt. No. 25. Plaintiff did not respond to this motion.

---

[1] All page references herein are to the Docket pages shown in the header to each document and brief cited, unless otherwise indicated.

For the reasons set forth below, Defendants' summary judgment motion is **GRANTED IN PART and DENIED IN PART.**

## DISCUSSION

### I. Plaintiff's Claims

Plaintiff's allegations are based on events that took place on December 24, 2021. Dkt. No. 1 at 4. Plaintiff is permanently confined to a wheelchair and receives assistance under the Americans with Disabilities Act ("ADA"). *Id.* That morning, Defendant Dominguez, the Unit C-4 Control Booth Officer, opened Plaintiff's cell door for morning medication release. *Id.* Plaintiff claims several inmates were standing around or near his cell door, which caused him to be concerned for his safety and health from Covid-19 exposure because he has "paralysis, asthma and vision impairments." *Id.* at 5. Plaintiff asked the ADA assistant to tell Defendant Dominguez to stop leaving his cell door wide open and allowing other inmates to stand idly nearby. *Id.* at 6. When he was about to wheeled out of his cell, Defendants Guijarro and Tapia approached and asked Plaintiff "what his problem was." *Id.* Plaintiff repeated his concerns at being exposed to other inmates in violation of health and safety protocols. *Id.* Then at Defendant Guijarro's prompting, Plaintiff proceeded to Facility "C" clinic to get his medication and returned to his housing unit at approximately 9:30 a.m. *Id.* at 7.

When Plaintiff returned to his housing pod, he saw that Defendants Guijarro and Tapia had begun searches of his cell, No. 111, and the adjacent one, No. 112. *Id.* Plaintiff believed the cell search was conducted in retaliation for his speaking out about Defendant Dominguez violating safety, security, and healthcare protocols, and he voiced this belief to Defendant Tapia; Plaintiff stated that he was going to report the matter to the sergeant and lieutenant. *Id.* at 7-8. As he turned his wheelchair to proceed to the exit, Plaintiff heard an alarm go off in the unit. *Id.* He heard running behind him and a voice yelling, "get down" and "get in the shower," directed towards other inmates. *Id.* at 9. Defendant Guijarro

approached Plaintiff and ordered him to "cuff up," after which he handcuffed Plaintiff's wrists in front of his body. *Id.* Defendant Guijarro then pushed Plaintiff "at a hurried pace" toward the exit. *Id.* Plaintiff's feet and pants were on the ground and being dragged underneath the wheelchair's front wheels. *Id.* at 10. Plaintiff yelled at Defendant Guijarro to stop pushing him, also asking where they were going. *Id.* As he was turning back with his neck and shoulders to speak with Defendant Guijarro, Plaintiff was suddenly tipped out of the wheelchair onto the concrete floor of the dayroom. *Id.* He landed on his shoulder and head hitting the pavement. *Id.* Plaintiff briefly blacked-out and was disoriented until he heard people around him. *Id.* Plaintiff remained on the ground for several minutes, in handcuffs and in pain, before any medical staff spoke to him. *Id.*

When a correctional sergeant, Defendant John Doe No. 6, asked Plaintiff if he was ready to get up and return to his cell, Plaintiff responded that he needed medical attention. *Id.* at 11. Medical staff soon arrived, and John Does No. 4 and 5 spoke to Plaintiff while he was still on the ground in handcuffs. *Id.* Plaintiff informed them that he was in severe pain in his head, shoulders, and back, and that the "guard had dumped him out of his wheelchair." *Id.* Medical staff departed and returned to ask Plaintiff if he was ready to get back into his wheelchair and return to his cell. *Id.* Plaintiff responded that he needed to see the doctor and that he was in pain; he requested a gurney or ambulance. *Id.* The medical staff stated that they had neither a gurney nor an ambulance. *Id.* Medical staff left and returned again to tell Plaintiff that if he got up and into his wheelchair, they would take him to the medical clinic or triage. *Id.* at 12. Plaintiff again stated that he was in pain and needed a gurney. *Id.* Seconds later, another alarm went off in the unit and nearly all the custody and medical staff left the pod, leaving Plaintiff on the floor still in handcuffs. *Id.* When medical and custody staff returned, Plaintiff was informed that "the Nurse or Doctor John Doe No. 7 and John/Jane Doe No. 8 had cleared him to return to his cell." *Id.* Plaintiff claims Defendant Serrato and John Does. Nos. 1 and 2, surrounded him, sat him up to a seated position, and attempted to lift him off the ground and into his wheelchair; all

3

the while, Plaintiff remained in restraints and unable to assist in any manner. *Id.* at 12-13. While he was being lifted, Defendant John Doe No. 3, a correctional lieutenant who was positioned behind the wheelchair, grabbed locks of Plaintiff's shoulder length, dread-lock styled hair and pulled Plaintiff's head backwards towards him. *Id.* When Plaintiff yelled for him to stop, the officers holding him suddenly dropped Plaintiff back down on the concrete pavement and walked towards the exit. *Id.* at 13. Defendant Dominguez opened cell no. 117, letting out two inmates who picked up Plaintiff and got him back into his wheelchair. *Id.* Defendant John Doe No. 2, who was at the pod's door, then came and removed Plaintiff's handcuffs. *Id.* Plaintiff wheeled himself back to his cell, No. 111. *Id.* Plaintiff was in so much pain after this incident that he was unable to get out his bunk for three days, unable to go to the cell door to get his daily meals or retrieve his daily medications. *Id.* at 14.

Plaintiff filed an inmate grievance regarding the incident and had a video-taped staff misconduct interview with the facility lieutenant, approximately four to five days after the incident. *Id.* He was informed that the matter would be investigated by the Office of Internal Affairs ("OIA"). *Id.* Plaintiff was later taken to the prison clinic where the nurse offered him Tylenol or Motrin, which Plaintiff refused due to pre-existing medical conditions, i.e., chronic kidney disease, which prohibited the use of NAIDS per doctor's advice. *Id.* Plaintiff also had x-rays taken of his head and upper body, approximately four to five days later. *Id.*

The Court found the complaint stated the following cognizable claims: (1) excessive force claims against Defendants Guijarro and John Doe No. 3 (Lt.); (2) deliberate indifference to serious medical needs against Defendants Serrato and John Does 1, 2, 4, 5, 7, and 8; and (3) supervisor liability claim against Defendant Sgt. John Doe No. 6. Dkt. No. 8 at 14. The Court dismissed the following claims with leave to amend: (1) ADA and/or RA claim against SVSP; (2) elder abuse claim under state law; (3) retaliation claim against Defendants Dominguez, Guijarro, and Tapia; (4) due process claim against

4

Defendant Tapia; and (5) supervisor liability claim against Defendant Allen.  *Id*. at 15.  When Plaintiff failed to file an amended complaint to correct the deficient claims, the Court dismissed them with prejudice, and ordered the matter to proceed on the cognizable claims.  Dkt. No. 14.

## II.     Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp.*, 477 U.S. at 323.  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case."  *Id*. at 325.  If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted.  *See Liberty Lobby*, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on

5

file,' designate specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citations omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Id*. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id*. at 631. It is not the task of the district court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Id*. If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. *See id.; see, e.g., Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028-29 (9th Cir. 2001). The court's obligation to view evidence in the light most favorable to the non-movant does not require it to ignore undisputed evidence produced by the movant. *L.F. v. Lake Washington School District*, 947 F.3d 621, 625 (9th Cir. 2020).

### A.     Exhaustion

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and no longer left to the discretion of the district court. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). "Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards." *Id*. at 85. The PLRA's exhaustion requirement requires "proper exhaustion" of available administrative remedies, which

6

includes compliance with an agency's critical procedural rules because "no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings." *Id*. at 90-91, 93.

The California Department of Corrections and Rehabilitation ("CDCR") provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). It also provides its inmates the right to file administrative appeals alleging misconduct by correctional officers. *See id*.

Compliance with prison grievance procedures is all that is required by the PLRA to "properly exhaust." *Jones v. Bock*, 549 U.S. 199, 217-18 (2007). The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. *Id*. at 218. Where a prison's grievance procedures do not specify the requisite level of factual specificity required in the grievance, "'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'" *Griffin v. Apraio*, 557 F.3d 1117, 1120 (9th Cir. 2009).

In California, the regulation requires the prisoner "to lodge his administrative complaint on CDC form 602 and 'to describe the problem and action requested.'" *Morton v. Hall*, 599 F.3d 942, 946 (9th Cir. 2010) (quoting Cal. Code Regs. tit. 15 § 3084.2(a)). The system consists of two levels of appeal: (1) at the first level, the inmate submits a form CDCR 602-1 to the Institutional Office of Grievances ("OOG") at the prison or other facility where he is housed, Cal. Code Regs. tit. 15 § 3084.2(a), (c) (repealed eff. June 1, 2020); and (2) if dissatisfied with the OOG's decision at the first level, an inmate can submit a form CDCR 602-2 to the CDCR's Office of Appeals in Sacramento ("OOA"). *Id.* at §§ 3084.1(a), 3485 (a) (repealed eff. June 1, 2020). To exhaust administrative remedies under these regulations, the inmate must complete the review process by appealing the first level decision to the OOA, and receiving a decision of "denied,"

7

"granted," "no jurisdiction," "identified as staff misconduct," "pending legal matter," or "time expired" in accordance with 15 Cal. Code Regs. § 3485 (g)(1)-(g)(3), (g)(8)-(g)(10). 15 Cal. Code Regs. § 3485(1)(1). Administrative remedies are not exhausted where the review process results in the OOA issuing the following decisions: "redirect," "reassign," "reject" or "disallowed," as defined in 15 Cal. Code Regs. § 3845(g)(4)-(g)(7). 15 Cal. Code Regs. § 3485(1)(2).

In *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014), the Ninth Circuit reviewed the district court's 2008 ruling that plaintiff had failed to exhaust available administrative remedies as to an officer not linked to wrongdoing in plaintiff's grievance and noted that neither the PLRA itself nor California regulations required an inmate to name the responsible parties who may ultimately be sued. *See id.* (claim properly exhausted where inmate described nature of the wrong and identified defendant as a responding officer). But as of January 28, 2011, California regulations require that the appeal name "all staff member(s) involved" and "describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(a)(3) (repealed eff. June 1, 2020); *see also* Cal. Code Regs. tit. 15, § 3084.2(c)(2) (eff. June 1, 2020) (grievance shall "describe all information known and available to the claimant regarding the claim, including … names and titles of all involved staff members (or a description of those staff members)").

An action must be dismissed unless the prisoner exhausted his available administrative remedies <u>before</u> he or she filed suit, even if the prisoner fully exhausts while the suit is pending. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002); *see Vaden v. Summerhill*, 449 F.3d 1047, 1051 (9th Cir. 2006) (where administrative remedies are not exhausted before the prisoner sends his complaint to the court it will be dismissed even if exhaustion is completed by the time the complaint is actually filed).

Nonexhaustion under § 1997e(a) is an affirmative defense. *Jones*, 549 U.S. at 211. Defendants have the burden of raising and proving the absence of exhaustion, and inmates are not required to specifically plead or demonstrate exhaustion in their complaints. *Id.* at

8

215-17. Defendants must produce evidence proving failure to exhaust in a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *Id*. If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. *Id*. at 1166. But if material facts are disputed, summary judgment should be denied and the district judge rather than a jury should determine the facts in a preliminary proceeding. *Id*.

A prisoner must provide evidence, not just make conclusory allegations, to meet his burden to show that existing and generally available administrative remedies were effectively unavailable. *See Draper v. Rosario*, 836 F.3d 1072, 1079-80 (9th Cir. 2016). A prisoner's "unsupported allegations" regarding impediments to exhaustion are insufficient to create a triable issue of fact. *Id.* (plaintiff's statements that prison officials had "engaged in impeding and unethical conduct of obstructing" his inmate appeals "from being exhausted in a timely manner," and had "prohibited and impeded" his efforts to exhaust were insufficient to create a triable issue because the prisoner did not explain what kinds of impeding and unethical conduct occurred).

### 1. **Plaintiff's Grievance**

It is undisputed that Plaintiff filed a grievance, Log No. 203073, on the same date of the incident on December 24, 2021. He attached a copy of this grievance to the complaint and identified it as exhausting the claims in this action. Dkt. No. 1 at 1-2, 24-27. With his opposition, Plaintiff provided some of the same (but clearer) copies of the grievance and related appeal papers as supporting exhibits. Dkt. No. 32. Defendants do not object to these exhibits nor contest the authenticity of these documents. These documents are summarized as follows[2]:

- Grievance Log No. 203073 (CDCR 602) filed on December 24, 2021: Plaintiff described returning to his cell and finding "two Floor c/o's" in the neighboring

---

[2] The documents are summarized in chronological order rather than the order in which they were filed. Dkt. No. 32.

9

cell, the same "c/o's" he had engaged with about the "tower officer repeatedly opening [his] cell-door at med-line." He alleged that after an alarm was pressed and additional staff came, "one" placed him in regular handcuffs in his wheelchair and began pushing him quickly toward the section door. Because Plaintiff's feet were not in the footrest, they went under the wheelchair wheels and caused Plaintiff to fall forward onto the floor, hitting his head and right shoulder. Plaintiff claimed that "med-staff" refused to take him to an ambulance or get a gurney, leaving him on the floor for an hour in pain. Plaintiff also claimed that "c/o's were taunting and laughing and calling [him] derogatory names," and "a Lt. pulled [his] dred-locks as c/o's were putting" him in the wheelchair. Dkt. No. 32 at 16, 18. Plaintiff sought damages for "abuse of disabled, medical indifferent, racial taunting, leaving me on floor and running to another alarm… the [Lieutenant] pulling [his] hair." *Id.* at 16.

- "Claimant Grievance Receipt Acknowledgement" of Log No. 203073, dated January 6, 2022: SVSP's OOG stated that it received Plaintiff's grievance on December 28, 2021, and that it had been assigned for review and response. Dkt. No. 32 at 2.

- "Claimant Grievance Claims Decision Response" from the OOG, dated February 23, 2022: The decision identified 2 claims from Plaintiff's grievance: Claim # 001 and Claim # 002. Claim # 001 was categorized as "Offender Safety and Security" with sub-category of "Use of Force," and the decision indicated that it was "Under Investigation." It also stated that since the investigation was still ongoing and would pass the 60 days allowed for OOA to respond, the OOG's response at the Institutional level would be the only response on this claim. Claim # 002 was categorized as "General Employee Performance" with sub-category of "Other Staff Misconduct – NOS." The decision stated that a review was conducted into the alleged incident and found that Plaintiff was on

10

the floor for an extended amount of time due to his own actions. "Medical staff were attempting to medically evaluate him, but he was being uncooperative… After medical determined [Plaintiff]'s medical needs did not necessitate medical transportation to a higher level of care, [Plaintiff] got up and was escorted to his cell." Nor were Plaintiff's allegations of verbal abuse by staff substantiated as Plaintiff himself did not hear staff being verbally abusive, only that an unidentified inmate had told him about it afterward. *Id.* The grievance was disapproved as the decision concluded that "No department policy violation nor staff misconduct was found during the review." *Id.* The grievance was "disapproved." Plaintiff was advised that he could file an appeal to the OOA. Dkt. No. 32 at 3-4.

- "Appeal of Grievance" (CDCR 602-2) of Log No. 203073, filed by Plaintiff on March 4, 2022, (received by the OOA on March 9, 2022): In this appeal, Plaintiff alleged that the response was a "cover-up." He alleged that "C/O Guijarro tripped [him] out of [his] wheelchair." He claimed that "you cannot abandon an inmate requiring medical attention on the floor in pain just to go to another emergency without medical clearance." Dkt. No. 32 at 12.

- "Decision on Appeal – Time Expired": A response memorandum from the Associate Director stated that the OOA had sixty calendar days to complete a written response to his appeal, but that since the time expired before the OOA was able to do so, the decision by the OOG "serves as the Department's final response to your allegations." Dkt. No. 32 at 11; *see also id.* at 3.

- "Rejected Response from the Office of Appeals": A response memorandum from the Associate Director stating that the above appeal was rejected for the reasons stated therein, and that this was the final answer provided by the OOA; "no further action will be taken" and "no appeal of this action is permitted under the regulations." Dkt. No. 32 at 7.

11

- "Claimant Appeal Claims Decision Response" from the OOA, dated October 14, 2022, for Log No. 203073: For Claim # 001, the decision stated that the appeal was "rejected" because the OOG's decision of "Under Investigation" constituted exhaustion of all administrative remedies for this claim, and therefore no appeal was available. (The OOG decision is described below). The decision for Claim # 002 indicated "time expired." The appeal was received on March 9, 2022, but the 60 calendar days that the OOA had to complete a response had expired. This response from the OOA would be the only response. Dkt. No. 32 at 10.

- "Inquiry Completed – Manual Grievance Decision Response" from the OOG, for Log No. 203073, dated November 8, 2022: The decision stated that the grievance was reviewed by the Allegation Inquiry Management Section ("AIMS"). The AIMS Lieutenant conducted "multiple interviews but did not receive any information to reach a reasonable belief that staff misconduct occurred." "Custody staff denied doing or observing the allegations occur." The AIMS relied on "testimony by the witnesses, subjects, and claimant." After reviewing staff interviews, inmate interview, the noted reviewed documents and AIMS inquiry regarding the allegations, "it has been determined there is no reasonable belief that staff violated any policy or procedure." Therefore, Plaintiff's grievance was "disapproved." Dkt. No. 32 at 14-15.

Dkt. No. 32.

Plaintiff's opposition papers also included an appeal of a different grievance, Log No. 270800:

- "Appeal of Grievance" (CDCR 602-2), for Log No. 270800, filed by Plaintiff on July 14, 2022, received by the OOA on July 21, 2022: Plaintiff requested that "this claim also look into C/O Guijarro who was involved in this 6/19/22 use of force." He alleged that on December 24, 2021, C/O Guijarro "tipped me out of my wheelchair in C4." The rest of the appeal discusses other issues, which are

apparently related to the "6/19/22 use of force." The appeal also mentions Defendant Serrato as one of the responding officers on December 24, 2021, and makes other allegations that are not related to the claims in this action. Dkt. No. 32 at 8-9.

- "Office of Appeals Decision" from the OOA, for Log No. 270800, dated August 21, 2022: The decision stated that the appeal was "rejected" because his claim "disputes or contravenes the regulatory framework for the grievance and appeal process which is not permitted under the California Code of Regulations, tit. 15, section 3485(g)(6)(E). Dkt. No. 32 at 5.[3]

### 2. Parties' Arguments

Defendants assert that grievance Log No. 203073 did not exhaust administrative remedies for Plaintiff's claims against Defendants Guijarro and Serrato because he did not identify either of them in the grievance. Dkt. No. 24 at 5. They assert that failure to describe defendants in the grievance and describe their involvement in the issue does not exhaust administrative remedies as to the unnamed defendants. *Id.*, citing Cal. Code Regs. tit. 15, § 3842(c)(2). Further, Plaintiff alleges that it was medical personnel that left him on the floor for hours, and not either of the Defendants. *Id.*

In opposition, Plaintiff asserts that all available remedies have been exhausted. Dkt. No. 26 at 1. He asserts that he sufficiently detailed the events from December 24, 2021, and that he did not know the names of any of the officers at the time. *Id.* at 3. Plaintiff asserts that section 3842(c)(2) only requires that "a grievant provided 'known and available [information] to him… to the best of his/her knowledge." *Id.* He relies on *Reyes v. Smith*, 810 F.3d 654 (9th Cir. 2010), which held that "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Id.* at 659. Plaintiff also asserts that "[i]n an attempt to ensure that plaintiff was exhausting his administrative

---

[3] Plaintiff submitted a duplicate copy of this OOA decision at Docket No. 32 at 6.

13

remedies, he filed another CDCR-602 asking that additional evidence be reviewed" in a different action involving Defendants based on a separate incident in June 2022, which is the basis for another lawsuit, USDC ND Cal. No. 5:22-cv-5832-BLF. *Id.* In exhibits filed in support, Plaintiff provides copies of his appeals of the grievance, in which he alleges specifically that Defendant Guijarro "tipped" him out of his wheelchair in C4 on December 24, 2021. Dkt. No. 32 at 8, 12 (dated March 4, 2022, and July 14, 2022).

In reply, Defendants point out that Plaintiff confirmed that the grievance attached to his complaint was the same one he alleged satisfied the administrative exhaustion requirement (Log No. 203073), and that he does not argue that it is it not accurate or otherwise inadmissible for the purpose of summary judgment. Dkt. No. 33 at 2. They also point out that Plaintiff does not contest that he did not name any of the Defendants in the grievance. *Id.* Defendants assert that the grievance did not provide sufficient information for CDCR to identify Defendants as being involved in the alleged wrongdoing. *Id.* It merely referred to "c/o's" in general terms, with no attempt to describe them, either by name, rank, or appearance. *Id.* Defendants also assert that Plaintiff's reliance on *Reyes v. Smith* is unavailing because it is distinguishable from this case: the defendants in that case were members of a pain management committee who were "easily identified" despite not being named in the administrative appeals. *Id.* at 3, citing *Reyes*, 810 F.3d at 659. Defendants assert that this is not the case here, where Plaintiff did not provide any information that would easily identify the unnamed prison officials. *Id.*

### 3. Analysis

Viewing the evidence in the light most favorable to Plaintiff, the Court finds Defendants have shown there exists no genuine issue of material fact as to whether Plaintiff properly exhausted his medical claim against Defendant Serrato but they have failed to do so with regard to his excessive force claim against Defendant Guijarro.

Plaintiff grieved the December 24, 2021 incident in Log No. 203073, and described two officers conducting cell searches and the tower officer repeatedly opening his cell-

14

door. *See supra* at 9-10. He also described how after an alarm was pressed, "one" staff placed him in regular cuffs and pushing him quickly toward the door. *Id.* at 10. He described his fall from the wheelchair and hitting his head and right shoulder. *Id.* As Defendants assert, there is no mention therein of either Defendants Guijarro or Serrato; in fact no staff member is identified by name. *Id.* Defendants are also correct that California currently requires that a proper grievance name the staff member involved and describe their involvement in the issue. Cal. Code Regs. tit. 15, § 3084.2(a)(3) (repealed June 1, 2020); 15 Cal. Code Regs. Tit. 15, § 3084.2(c)(2) (effective June 1, 2020). Moreover, California explicitly prohibits adding new issues, information, or persons at later stages of the grievance process. Cal. Code Regs. tit. 15, § 3084.1(b) (repealed June 1, 2020); Cal. Code Regs. tit. 15, § 3084(d)(4) (effective June 1, 2020).

However, the Court finds that *Reyes* does apply to save Plaintiff's claim against Defendant Guijarro. If an inmate's grievance does not comply with a procedural rule but prison officials decide it on the merits anyway at all available levels of administrative review, it is exhausted. *Reyes*, 810 F.3d at 656, 658. Thus, a California inmate whose grievance failed to name all staff members involved in his case, as required by former 15 Cal. Code Regs. § 3084.2(a)(3) (repealed eff. June 1, 2020), nevertheless exhausted his claim of deliberate indifference to his serious medical needs because that claim was decided on its merits at all levels of review. *See id.* at 656-57. Similarly, Plaintiff's grievance was decided on its merits at all available levels of review, with the decision of the OOG being the final response despite the failure to name staff members involved. *See supra* at 11. Although Defendants assert that Plaintiff's case is distinguishable from *Reyes,* the Court disagrees. Plaintiff's grievance provided sufficient information to indicate that specific staff could be identified through an investigation, namely the officers who were searching the cells just prior to the incident and the specific staff member who pushed Plaintiff's wheelchair, causing him to fall. The grievance decision from the OOG on November 8, 2022, indicated that multiple interviews had been conducted, including

15

the "testimony of witnesses, subjects, and claimant," to arrive at the conclusion that "there [was] no reasonable belief that staff violated any policy or procedure." *See supra* at 12. Accordingly, the Court finds that Plaintiff exhausted his claim against Defendant Guijarro for excessive force.

On the other hand, Plaintiff's grievance does not contain sufficient information to exhaust his medical indifference claim against Defendant Serrato. With regard to this claim, Grievance Log No. 203073 only alleges that "med-staff" refused to take Plaintiff to an ambulance or get a gurney, and then left him on the floor for an hour in pain. *See supra* at 10. There is no mention of any specific correctional officer other than a John Doe "Lt." who pulled his hair as other officers were putting him in the wheelchair. Furthermore, there is no allegation in the grievance that the officers then walked away and left him, acting with deliberate indifference to his serious medical needs. *Id.* Nor does the decision indicate that anyone other than medical staff were involved in the review. *Id.* at 10-11. Accordingly, it cannot be said that this grievance alerted prison officials that Plaintiff had a claim against Defendant Serrato.

Plaintiff asserts that he exhausted the claim against Defendant Serrato through another grievance, Log No. 270800, in which he mentions Defendant Serrato as one of the responding officers on December 24, 2021. *Id.* at 12. However, this grievance was not decided on its merits at all levels of review because it was "rejected" on appeal as violating Cal. Code Regs. tit. 15, § 3485(g)(6)(E). Accordingly, the Court finds that the claim against Defendant Serrato was not exhausted under *Reyes*.

For the reasons described above, Defendants have shown that Plaintiff failed to exhaust available remedies with respect to his claim against Defendant Serrato. *Albino*, 747 F.3d at 1172. However, Plaintiff has shown in opposition that he properly exhausted his claims against Defendant Guijarro. Based on the foregoing, the Court grants summary judgment on the claim against Defendant Serrato, but denies it with respect to the claim against Defendant Guijarro. *See Celotex Corp.*, 477 U.S. at 323-24.

### III. Motion for Stay of Discovery

With their motion for summary judgment, Defendants moved for a stay of merits-based discovery, which the Court inadvertently neglected to rule on in a timely manner. Dkt. No. 25. The motion would have been granted in the absence of any objection from Plaintiff. *See Albino v. Baca*, 747 F.3d 1162, 1170-71 (9th Cir. 2014) (en banc) (court may in its discretion limit discovery to evidence concerning exhaustion, which whenever feasible should be decided at the beginning of litigation, and leave until later, if necessary, discovery directed to the merits of the suit). However, in light of this order, the motion shall be terminated as moot.

### CONCLUSION

For the reasons stated above, the Court orders as follows:

1. Defendants' motion for summary judgment is **GRANTED in part and DENIED in part**. Dkt. No. 24. The claim against Defendant Serrato is **DISMISSED** for failure to exhaust administrative remedies. The Clerk shall terminate Defendant Serrato from this action.

2. This action shall proceed on the merits of the remaining excessive force claim against Defendants Guijarro and John Doe No. 3 (Lt.), if Plaintiff is able to identify this defendant by name as directed in a separate order. **No later than fifty-six (56) days from the date this order is filed**, Defendants shall file a dispositive motion or notice indicating that the claims against them cannot be resolved by such a motion.

If Defendants file a dispositive motion, Plaintiff's opposition shall be filed with the Court and served on Defendants **no later than twenty-eight (28) days** from the date Defendants' motion is filed.

3. Defendants <u>shall</u> file a reply **no later than fourteen (14) days** after the date on which Plaintiff's opposition is filed.

4. Defendants' motion to stay discovery is **DENIED** as moot in light of this

17

order. Dkt. No. 25.

5. All other relevant portions of the Court's May 3, 2023, Order of Partial Dismissal and of Service (Dkt. No. 14) shall remain in effect.

This order terminates Docket Nos. 24 and 25.

**IT IS SO ORDERED.**

**Dated: ___May 21, 2024_____**

/s/ Beth Labson Freeman
BETH LABSON FREEMAN
United States District Judge

Order Granting/Denying In Part Defs.' MSJ (exh); Briefing Sched
PRO-SE\BLF\CR.22\05831Washington_deny-msj(exh)&brief

18